## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RONALD KOTTKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-242-TLS |
| | ) | |
| RICK RYFA, JIM MARKER, | ) | |
| GARY SUTTON, LIZ GORAL, | ) | |
| ROANN PURGERT, and | ) | |
| JOHN VOLKMANN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's First

Amended Complaint for Monetary Damages & Equitable Relief for Failure to State a Claim

Upon Which Relief Can be Granted Pursuant to Fed. R. Civ. Pro. 12(b)(6) [ECF No. 18], and on

the Plaintiff's Motion for Leave of Court to Dismiss Count II of Plaintiff's First Amended

Complaint [ECF No. 22].


## COMPLAINT ALLEGATIONS

According to the First Amended Complaint, Plaintiff Ronald Kottka was a police officer

in Griffith, Indiana, for about 38 years. He asserts that the Defendants, who sit on Griffith's

Public Safety Commission, are liable to him in their individual capacities for depriving him of

procedural due process rights, forcing him into retirement, and defaming his character and

reputation.

In 2012, the Plaintiff was demoted from the position of police chief for the town of

Griffith. In connection with the demotion, the Defendants made oral and written statements to

the public that the Plaintiff's demotion was the result of his misconduct. One of the Defendants, Rick Ryfa, accused the Plaintiff of having engaged in harassment of another officer, which was false. The Plaintiff requested due process to respond to the allegations, but was denied a hearing or other procedural safeguards. After he was demoted, the Defendants continued to publicly accuse the Plaintiff of misconduct, and thereby created an intolerable and hostile work environment. The Plaintiff maintains that he was forced to retire "as a result of hostile work environment, misinformation, accusations, and deception." (First Am. Compl. ¶ 19, ECF No. 17.)

Count I of the First Amended Complaint is a claim under 42 U.S.C. § 1983 for denial of procedural the due process rights guaranteed to him by the Fourteenth Amendment. In Count II, the Plaintiff alleges that the Defendants are liable for creating a hostile work environment and constructively discharging him from his employment. Count III is a claim for defamation under Indiana Code § 34-15-1-1 and Indiana common law.

## ANALYSIS

### A.      Motion to Amend

In response to the Defendants' Motion to Dismiss, the Plaintiff states that he opposes the dismissal of Count II pursuant to the Defendants' Motion, but that he would seek leave of Court to amend his pleading to dismiss Count II without prejudice on his own volition. The Plaintiff then filed his Motion seeking leave to dismiss Count II pursuant to Federal Rule of Civil Procedure 15(a)(2). Because Rule 15(a)(2) mandates that a court freely grant leave to amend a pleading when justice so requires, the Court will consider the operative pleading to contain only

the federal due process and state defamation claims.

**B.      Motion to Dismiss**

Under Rule 8's pleading requirements, a Plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that is sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2). To assure that a pleading suffices to give effective notice to the opposing party, a complaint must contain facts that are sufficient, when accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings that fail to meet this standard are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).


1.      Count I—Procedural Due Process

The Plaintiff alleges that the Defendants, acting under color of state law, deprived him of his property interest in continued employment as a police officer without providing due process. The Plaintiff asserts that he was deprived of this protected interest through a constructive discharge that was brought about by the Defendants' continued accusations of wrongdoing, both privately and publicly.

"The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law." *Castetter v. Township*, 959 N.E.2d 837, 843 (Ind. Ct. App. 2011) (citing *Austin vs. Vanderburgh Cnty. Sheriff Merit Comm'n*, 761 N.E.2d 875, 879 (Ind. Ct. App. 2002)). When a plaintiff claims that

he was denied due process, the court conducts a "two-part inquiry, asking '(1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law.'" *Williams v. Seniff*, 342 F.3d 774, 787 (7th Cir. 2003) (quoting *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003)).

A protected property interest generally arises from a statute, ordinance, or contract. *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1193 (Ind. 1989). Indiana Code § 36-8-3 et seq. establishes the procedures that Indiana Public Safety Boards must follow in disciplining a member of a police department. The Plaintiff does not dispute that police chiefs may be removed from their rank without notice, hearing, or good cause. *See* Ind. Code § 36-8-3-4(m) (providing that the executive may reduce in grade any member of the police department who holds an upper level policy making position without a hearing and other protections). Thus, his claim is not that the Defendants denied him due process by demoting him from police chief. His claim is that he held a property interest in his continued employment as a police officer, and that in his position as a "Griffith Police Officer following his demotion until the time of his resignation, his work assignments were such that there was a material change in form and substance amounting to a demotion more substantial than the demotion permitted by statute." (Pl.'s Resp. 5, ECF No. 20 (citing Ind. Code § 36-8-3-4(m), which provides that a "member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policy making position").) Although this specific assertion is not found in his pleading, the Plaintiff claims that it is proper to now expound and elaborate to point out that he "did not enjoy all of the rights and privileges afforded to a police officer in the Griffith Police Department upon his demotion, since the demotion involved diminished responsibilities[;] isolation from other

4

officers; and consistent, severe and pervasive accusations against him by Defendants that he was a wrongdoer." (Pl.'s Resp. 6; *see also id.* 8 (claiming that he was relegated "to the most insignificant of chores").) The Plaintiff maintains that he sought, and was entitled to, due process in response to the accusations and charges that the Defendants continued to lodge against him after his demotion and while he was still a police officer.

From these arguments, the Court understands the Plaintiff to be alleging that it was the materially adverse conditions of his employment during the period of time after his demotion and before his resignation that deprived him of a protected property interest. The Plaintiff's argument is essentially that, if he was going to be accused of wrongdoing that created hostility in his work environment, he was entitled to due process to address those accusations. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Indiana statute gave the Plaintiff a legitimate claim of entitlement to his employment at a particular grade and rank. *See* Ind. Code § 36-8-3-4. But that does not help him state a claim because the Plaintiff's grade and rank were not lowered. What the Plaintiff is left trying to establish is that he had a constitutionally-protected property interest in a workplace that was free from allegations of misconduct. The Plaintiff has not pointed to any source that creates such a right that is safeguarded by due process.[1]

As stated earlier, the Plaintiff had a protected property interest in continued employment,

---

[1] One argument the Plaintiff appears to advance is that he had a protected interest in being free from allegations, not generally, but *because* he had a right to challenge and face his accusers. It is circular to identify the property right by pointing to the due process requirements that purportedly exist.

and the Plaintiff's claim that his resignation was involuntary by virtue of a constructive

discharge implicates this property interest.

> A public employee who voluntarily resigns cannot complain about a lack of due process, but an "involuntary" resignation may in certain circumstances form the basis of a due-process claim. *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982). Two types of involuntary resignation may qualify—constructive discharge and coerced resignation. *Patterson v. Portch*, 853 F.2d 1399, 1405–06 (7th Cir. 1988). Constructive discharge occurs when an employer makes employment so unbearable that an employee resigns; coerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges. *See id.*

*Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010); *see also Lauck v. Campbell Cnty.*, 627 F.3d

805, 813 (10th Cir. 2010) (recognizing that a due process constructive discharge claim "can be

based on the employer's intentionally or knowingly creating working conditions so intolerable

that a reasonable employee would quit"). An employer cannot "circumvent the due-process

requirements that would attend a true firing by trying to compel a resignation in a manner that

violates the employee's property . . . rights." *Lauck,* 627 F.3d at 813; *see also Fowler v.

Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986) ("Constructive discharge in a

procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to

avoid affording pretermination hearing procedures."). To establish such a claim, a plaintiff must

show that (1) his resignation was a constructive discharge; (2) the employer knew or intended

that such intolerable conditions were being imposed on the plaintiff; and (3) the defendant failed

to conduct an appropriate hearing to determine whether its actions would violate the plaintiff's

rights. *Lauck*, 627 F.3d at 813.

The Plaintiff's pleading does not satisfy the first element. According to the Plaintiff's

First Amended Complaint, he was labeled a wrongdoer and accused of harassing another officer.

These accusations, however, were not made by his employer. "A constructive discharge occurs when an employer purposefully creates working conditions [that] are so intolerable that an employee has no other option but to resign." *Cripe, Inc. v. Clark*, 834 N.E.2d 731, 735 (Ind. Ct. App. 2005) ("constructive discharge doctrine . . . transforms what is ostensibly a resignation into a firing"). The First Amended Complaint is completely silent regarding the actions or inaction of the Plaintiff's employer in relation to the Defendants' statements. Thus, it would be entirely speculative to suggest that the Plaintiff's employer purposefully created conditions that negatively impacted the Plaintiff.

Additionally, the averments in the First Amended Complaint that the Defendants continued to accuse the Plaintiff of wrongdoing in the context of his employment are insufficient to create an inference that working conditions were so intolerable or unbearable that a reasonable employee would have had no choice but to resign. *See Cripe*, 834 N.E.2d at 736 (noting that the doctrine of constructive discharge is limited to egregious cases); *see also Gilhooly v. UBS Secs., LLC*, 772 F. Supp. 2d 914, 917–18 (N.D. Ill. 2011) (finding that the plaintiff's allegations that her employer's constant criticism and harassment about her work left her with little choice but to resign was a bare factual allegation that did "not give rise to a plausible inference that workplace conditions were so intolerable that a reasonable person would have been compelled to resign"). Even if the Plaintiff's attempt to supplement the First Amended Complaint through his briefing by stating that he had diminished responsibilities and was isolated from other officers was proper, *see Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (describing as "fruitless" a plaintiff's attempt to supplement complaint in his briefing with additional details) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1103 (7th Cir. 1984) for the

principle "that a complaint may not be amended by briefs in opposition to a motion to dismiss")),

these assertions do not plausibly suggest conditions so unbearable that resignation was the only

reasonable option. Even if the conditions were unbearable, there is no plausible factual basis to

support an inference that the Defendants continued to accuse the Plaintiff of wrongdoing so he

would resign his employment and thereby permit the government entity charged with providing

due process to avoid appropriate hearing procedures before dismissal.

Because the Defendants' allegations of misconduct did not deprive the Plaintiff of a

protected property interest, he does not set forth a plausible claim for relief under § 1983.

2.      Count III—Defamation

Having determined that the Plaintiff's federal claim must be dismissed, the Court

declines to exercise supplemental jurisdiction over his remaining state law claim. See 28 U.S.C.

§ 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over

state claims if it "has dismissed all claims over which it has original jurisdiction") "[T]he general

rule is that, when all federal claims are dismissed before trial, the district court should relinquish

jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v.*

*Assoc'd Ins. Cos. Inc*., 29 F.3d 1244, 1251 (7th Cir. 1994).

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Plaintiff's Motion for Leave of

Court to Dismiss Count II of Plaintiff's First Amended Complaint [ECF No. 22], GRANTS IN

PART the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Monetary Damages & Equitable Relief for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to Fed. R. Civ. Pro. 12(b)(6) [ECF No. 18], and DECLINES to exercise supplemental jurisdiction over Count III, the remaining state law claim. There are no remaining claims in this litigation.

SO ORDERED on November 26, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION